UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARCUS SMITH, by his mother and natural
guardian DONNA SMITH,

                             Plaintiff,

-against-

LITTLE FLOWER CHILDREN'S SERVICES
OF NEW YORK, et al.,

                             Defendants.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

**CV-99-1410 (RJD)**

DEARIE, District Judge.

On March 12, 1999, plaintiff Marcus Smith commenced this personal injury action against the City of New York ("City"), several of its child welfare officers and employees, Little Flower Children's Services ("Little Flower"), and several of its employees, pursuant to 42 U.S.C. § 1983 and state tort laws. On November 2, 2001, four days into trial, the parties agreed to settle the case for $1,250,000.00. Within a week, the Department of Social Services ("DSS") asserted a lien on plaintiff's recovery pursuant to Section 104-b of the New York Social Services Law, which authorizes public welfare officials to assert liens on recoveries for personal injury obtained by welfare recipients. Specifically, DSS seeks reimbursement for Medicaid payments provided to plaintiff from December 1, 1998 through October 11, 2001. Plaintiff argues that DSS should be barred from imposing a lien based on Medicaid payments and moves to vacate. Additionally, plaintiff's counsel requests fees in the amount of $16,036.00 as compensation for the instant motion. For the following reasons, the Court denies plaintiff's motion to vacate the lien and orders the lien be paid in full.

1

## Background

Plaintiff, a minor, was born on June 2, 1992. In March 1996, plaintiff's foster brother inflicted him with severe injuries, including permanent brain damage and lacerations to his liver. Kubitschek Decl. ¶ 19, Nov. 21, 2001 Notice of Lien. As a foster child, plaintiff was in the legal custody of the Commissioner of the Administration for Children's Services. Kubitschek Decl. ¶ 13. The City contracts with private foster care agencies to provide day-to-day care of foster children. Id. ¶ 14. Pursuant to such a contract, defendant Little Flower was responsible for plaintiff while he was in foster care. Id. Between December 1, 1998 and October 11, 2001, plaintiff received Medicaid payments for his medical care relating to these injuries.

In order to calculate the amount of the lien, the DSS Division of Liens and Recovery ordered a claims detail report ("CDR") for these Medicaid payments.[1] Israel Supp. Aff. ¶¶ 4-5, Israel Aff. Ex. 1. In the weeks following the settlement, DSS sent plaintiff two notices specifying the amount of its lien: the first, dated November 9, 2001, claimed a lien of $34,360.00; the second, dated November 21, 2001, claimed $44,812.04.

On January 3, 2002, DSS alerted the Court to a relevant change in the State Department of Health's policy: Medicaid payments related to services in the area of "special education" would no longer be subject to lien. Israel Supp. Aff. ¶ 2. Prior to this directive, DSS had included special education charges causally related to the personal injury recovery as part of its asserted lien. Id. Because a substantial portion of the Medicaid payments related to special education services were provided to plaintiff by the New York City Board of Education, DSS

---

[1] A CDR is a computer printout listing all Medicaid charges for an individual recipient, including the date of the charge, the amount of the charge, and the name of the provider. Israel Aff. ¶ 4.

reduced its asserted lien to $10,871.86. Id. ¶ 3.

On February 8, 2002, the Court entered an Order of Compromise directing defendants to pay plaintiff's counsel $436,977.43 as reimbursement and to pay plaintiff $2,500.00 to buy a computer, $765,522.57 to purchase an annuity to provide monthly payments after plaintiff's eighteenth birthday, and $45,000.00 to deposit into an escrow account, pending this motion to determine the validity of DSS's lien.

Plaintiff now objects to the assertion of any lien against his recovery and moves to vacate. He argues that (1) this Court has the power to vacate DSS's lien, (2) DSS's lien violates the First Amendment by chilling his right of access to the courts, (3) the interests of justice demand that the lien be rejected, (4) DSS has failed to prove assignment, (5) DSS has waived its right to collect from the proceeds of the settlement, and (6) DSS has failed to prove the amount of its lien.

## Discussion

Pursuant to federal law, Medicaid recipients must assign the state their rights to seek and collect payment for medical care from a responsible third party. See 42 U.S.C. § 1396k. DSS, as the agency administering Medicaid, "obtains all of the rights that the recipient has against the third party to recover for medical expenses, including the ability to immediately pursue those claims against the third party." Cricchio v. Pennisi, 90 N.Y.2d 296, 304-05 (1997). As part of its recoupment power, DSS may place a lien on a Medicaid recipient's personal injury claims against a tortfeasor in order to recover its medical expenditures. N.Y. Soc. Serv. L. § 104-b(1). If a Medicaid recipient has a right of action "on account of any personal injuries suffered by such recipient," DSS may assert a lien "for such amount as may be fixed by the public welfare

3

official" up to the amount it has expended. N.Y. Soc. Serv. L. § 104-b. The lien "shall attach to any verdict, decision, decree, judgment, award or final order in any suit, action or proceeding in any court or administrative tribunal of this state respecting such injuries, as well as the proceeds of any settlement thereof" and continues until discharged by the public welfare official. N.Y. Soc. Serv. L. § 104-b(3). DSS's ability to enforce its right to reimbursement through a lien is "broad." Calvanese v. Calvanese, 93 N.Y.2d 111, 118 (1999).

### A. This Court's Power to Grant Relief

Plaintiff argues that the lien is not in infant plaintiff's best interest and thus must be rejected by the Court, which acts as a guardian of those interests. This Court has an obligation to approve a settlement in the best interest of an infant plaintiff. U.S. Dist. Ct. Rules S. & E.D.N.Y., Civ. Rule 83.2.[2] It does not follow, however, that the court should vacate a 104-b lien simply because it would be better if the infant could retain all proceeds from a settlement. New York courts have routinely enforced Medicaid liens in cases involving infant plaintiffs. See, e.g., Gold v. United Health Servs. Hosps., 95 N.Y.2d 683 (2001); Colondres v. Scoppetta, 290 F. Supp. 2d 376 (E.D.N.Y. 2003). The DSS does not relinquish its lien rights on the grounds of a party's age.

### B. The "Chilling Effect" of DSS's Lien

Plaintiff argues that DSS's imposition of the lien unconstitutionally restricts his right to sue and chills future plaintiffs from bringing similar actions against the City. The right of access

---

[2] See also Anderson v. SAM Airlines, No. 94-1935, 1997 U.S. Dist. LEXIS 23634, at *22 (E.D.N.Y. Apr. 25, 1997) (noting that after negotiation of settlement, the role of the judge "necessarily changes from adjudicator to guardian . . . [and] his sole duty is to exercise the most jealous care that no injustice be done to the infant").

4

to the courts is guaranteed by the First Amendment right to petition the government for redress of grievances. Bill Johnson's Rests., Inc. v. NLRB, 461 U.S. 731, 741 (1983). In order to prove a First Amendment violation, plaintiff must prove that: "(i) he has an interest protected by the First Amendment; (ii) the defendant's actions are motivated by or substantially caused by the plaintiff's exercise of that right; and (iii) the defendant's actions effectively chilled the exercise of the plaintiff's First Amendment rights." Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir. 1998) (citations omitted).

DSS did not assert its lien until after the parties had entered into a settlement agreement, nearly eighteen months after plaintiff filed this action. There is no evidence that DSS's actions were "substantially caused" by plaintiff's exercise of his right to sue the City. Id. Additionally, there is no evidence that DSS's assertion of the 104-b lien "effectively chilled" plaintiff's exercise of his right to sue the City: on March 12, 1999 plaintiff filed the instant lawsuit despite DSS's statutory obligation to collect medical expenses from the damages he sought. Id.; see also Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001) (noting that a plaintiff must show his First Amendment rights were "actually chilled"). Nor is there evidence to support plaintiff's position that DSS's lien practice "decreases the willingness of parties to bring" similar suits against the City. Pl.'s Br. at 5. To be consistent with its responsibility as "the payer of last resort," In re Costello v. Geiser, 85 N.Y.2d 103, 106 (1995) (citations omitted), and to act on it, DSS must be able to pursue the statutory recoupment procedures available under state and federal law. The state should not be prohibited from enforcing its statutorily protected right and duty where its actions are not "retaliatory . . . or intended to limit the [individual's] right of access." Brown v. Stone, 66 F. Supp. 2d 412, 435 (E.D.N.Y. 1999) (citations omitted).

## C. The "Interests of Justice"

Plaintiff submits that the City's status as a defendant should prohibit any lien recovery by DSS, arguing that it is unjust for defendant to recover costs from plaintiff that were necessitated by its acts. However, plaintiff sued the City, not DSS, for its role in placing him in the custody of unfit guardians and, although DSS is a City agency, it is a distinct entity. Defs.' Br. at 9. In fact, its only function relevant to plaintiff's suit is the performance of a legally imposed duty to distribute Medicaid payments and recover medical expenses from responsible third parties. 42 U.S.C. § 1396k.

The Second Circuit affirmed a Medicaid lien in a factually similar case. In Sullivan v. County of Suffolk, plaintiff brought a Section 1983 action against the county after one of its police officers shot and paralyzed him. 1 F. Supp. 2d 186 (E.D.N.Y. 1998), aff'd, 174 F.2d 282 (2d Cir. 1999). The parties agreed to a settlement and the local DSS filed a § 104-b Medicaid lien for plaintiff's medical assistance since his injury. Id. The court rejected plaintiff's argument that DSS could not pursue its claim against the county as the defendant because the county was "somehow the same as the DSS." Id. at 190-91. The court explained that DSS is "charged with the administration of public assistance . . . and is provided with reimbursement from the state for expenditures in providing medical assistance to the needy," while the county, on the other hand, was sued in "its capacity as the party responsible for the actions of [the tortfeasors]." Id. at 191. This very distinction between DSS and the City of New York bars the instant plaintiff from succeeding on the same argument.

Plaintiff urges this Court to consider the Eighth Circuit's decision in Hankins v. Finnel, 964 F.2d 853 (8th Cir. 1992). He argues that New York Social Services Law Section 104-b is

6

unconstitutional for the same reasons that the Eighth Circuit found Missouri's Incarceration Reimbursement Act unconstitutional. Ltr. from Kubitschek to Court dated Apr. 20, 2002 at 2. However, Hankins is "limited to the unique circumstances attendant upon reimbursement for costs imposed by the state as a consequence of incarceration." Brown, 66 F. Supp. 2d at 439 (noting that "[t]he logical conceptual reach of plaintiff's § 1983 preemption claim would immunize all civil rights recoveries in any § 1983 litigation by one indebted to the State since the issue of deterrence would always be implicated"); see also Colondres, 290 F. Supp. 2d at 381.

D. **Assignment**

Plaintiff argues that the state never procured assignment of plaintiff's right to recover from responsible third parties. Although there is no evidence in the record suggesting any actual assignment of plaintiff's rights to DSS, an assignment is implicit. The recoupment of Medicaid funds from responsible third parties is accomplished by federal directives that the state plan include assignment, enforcement, and collection mechanisms. See 42 U.S.C. §§ 1396k [A][1][a]; 1396a [A][25][I]. Specifically, as a condition of eligibility, "all applicants and recipients must assign [DSS] any benefits which are available to him or her individually from any third party" up to the amount of medical assistance paid. N.Y. Soc. Serv. L. § 366[4][h][1]; see also N.Y. Soc. Serv. L. § 367-a [2][b];[3] 18 NYCRR 360-7.4[a][4]. New York courts have consistently upheld this assignment condition of Medicaid eligibility, holding that once someone has received Medicaid benefits, that person's rights to third party payments are automatically assigned to the State. See e.g., Sullivan, 174 F.3d at 285-86; Cricchio, 90 N.Y.2d at 307; Calvanese, 93 N.Y.2d

---

[3] The statute provides that DSS "shall be subrogated, to the extent of its expenditures . . . for medical care furnished, to any rights such person may have to medical support or third party reimbursement." N.Y. Soc. Serv. L. § 367-a [2][b].

7

at 117-18. The assignment condition has been upheld even in the case of infant plaintiffs. Gold, 95 N.Y.2d at 691. "DSS is obligated to use public funds, which are not unlimited, to meet the needs of all aid recipients . . . [and] is charged with the responsibility to . . . conserve public funds through assignment and recovery." Hoke v. Ortiz, 83 N.Y.2d 323, 330 (1994). As a Medicaid recipient, plaintiff assigned his right to recover from a third party to DSS.

### E. Waiver

Plaintiff "believes" that the City's failure to sue Little Flower constitutes a waiver of its rights to collect the value of medical assistance provided to plaintiff. Pl.'s Reply Br. at 5. He cites no authority for this proposition. Additionally, he mistakenly likens DSS to the City. See Sullivan, 1 F. Supp. 2d at 190-91 (finding that a county is not "somehow the same as the DSS"). Accordingly, the Court finds that plaintiff's waiver argument is without merit.

### F. The Amount of the Lien

Plaintiff argues that DSS has not sufficiently established the amount of the lien. Plaintiff points to the revisions to the amount of the lien as proof for his argument. Pl.'s Br. at 7. However, DSS provided this Court with the CDR used for preparing the lien in this case. Israel Aff. Ex. 1. Furthermore, DSS explained that its Division of Liens and Recovery only analyzed charges related to the injuries for which the settlement was intended to compensate plaintiff and that Medicaid payments related to "special education" were no longer subject to lien. Israel Supp. Aff. ¶ 2. DSS's explanation and evidence of its calculation are sufficient to establish the amount of the lien.

### Conclusion

For the foregoing reasons, the Court orders that the lien be paid in full from the escrow

account and that the remaining funds in the escrow account be distributed to the plaintiff pursuant to the terms of the settlement agreement. Plaintiff's attorneys' request for $16,036.00 in fees and expenses, in addition to the $436,977.43 already received pursuant to the settlement agreement, is denied.

SO ORDERED.

Dated: Brooklyn, New York
       August 4, 2005

RAYMOND J. DEARIE
United States District Judge